THOMAS J. RINKEL and SHERRY L. RINKEL, Petitioners v. COMMISIONER OF INTERNAL REVENUE, Respondent
Rinkel v. Commissioner
Docket No. 6931-87
United States Tax Court
T.C. Memo 1989-631; 1989 Tax Ct. Memo LEXIS 631; 58 T.C.M. (CCH) 766; T.C.M. (RIA) 89631; November 27, 1989
Thomas J. Rinkel, pro se. Juandell Glass, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined deficiencies and additions to tax in Thomas J. Rinkel's Federal income taxes as follows: Additions to Tax under Sections [1]
Year
Deficiency
6651(a)(1)
6653(a)
6653(a)(1)
6653(a)(2)
6654
6661(a)
1980
$ 22,177
$  5,544
$ 1,109
---
---
$ 1,413
---
1981
$ 30,438
$  7,610
---
$ 1,522
*
$ 2,332
---
1982
$ 52,666
$ 13,167
---
$ 2,633
*
$ 5,126
$ 13,167
1983
$ 53,113
$ 13,278
---
$ 2,656
*
$ 3,250
$ 13,278
1984
$ 55,076
$ 13,769
---
$ 2,754
*
$ 3,463
$ 13,769
*634 Respondent also determined deficiencies in his self-employment tax. In a separate notice of deficiency, respondent determined deficiencies and additions to tax in Sherry L. Rinkel's Federal income taxes for 1980 through 1984; he has now conceded those deficiencies and additions to tax. Accordingly, hereinafter, all references to petitioner shall be to Thomas J. Rinkel. The parties have reached an agreement as to the amount of the deficiencies and additions to tax petitioner will owe if the issues set forth herein are determined in favor of respondent. Those issue are: (1) whether amounts received by American Heritage Fellowship and other organizations founded by petitioner constitute taxable income to him; (2) if such amounts do in fact constitute taxable income to petitioner, whether he is entitled to a charitable contribution deduction in the amount of 50 percent of his income; (3) whether petitioner is liable for self-employment *635 tax pursuant to section 1401; (4) whether petitioner is liable for the addition to tax pursuant to section 6651(a)(1) for failure to timely file his tax returns; (5) whether petitioner is liable for the additions to tax pursuant to sections 6653(a), 6653(a)(1) and 6653(a) (2) for negligence; (6) whether petitioner is liable for the addition to tax pursuant to section 6654(a) for failure to make estimated tax payments; and (7) whether petitioner is liable for the additions to tax pursuant to section 6661 for substantial underpayments. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Broken Arrow, Oklahoma, during the years at issue. They resided in Owasso, Oklahoma, at the time the petition herein was filed. Petitioner did not file tax returns for the years in issue, although prior to 1980 (the earliest of the years in issue) he had filed joint returns with his wife. Petitioner worked for Blue Cross/Blue Shield in Tulsa as its district manager for the small business division. In November 1979, he established a ministry, *636 which eventually became known as American Heritage Fellowship (AHF), and took a vow of poverty. Thereafter, he began promoting the sale of tax schemes, such as mail order ministries and family trust programs. In early 1980, he left his employment with Blue Cross/Blue Shield. AHF, through petitioner and others, sold church charters and minister's credentials as part of a plan to exploit tax benefits afforded religious organizations and ministers. AHF encouraged persons to stop voluntarily paying taxes to "big daddy IRS", and it sold a Freedom Program which contained suggestions on how to avoid paying taxes. AHF did not pay petitioner a salary; however, it paid all of his and his family's living expenses, including the mortgage on his house. In late 1981, petitioner formed American Patriots Services (APS) in order to separate the sale of his tax schemes from his alleged church activities. Through APS, petitioner promoted and sold family trust packages. In March 1983, APS was dissolved; thereafter, family trust packages were marketed as the Patriot Assistant Program and sold through AHF. Petitioner also sold church and family trust packages through an organization (which he *637 dominated and controlled) known as American Free Man. Petitioner held himself out as a tax consultant. During the years in issue, he prepared numerous tax returns and amended returns for others in which claims were made that Federal reserve notes were not cash, wages were not income, and in which deductions were taken for fraudulent charitable contributions. As compensation for filing such returns, petitioner received 25 percent of the refund his clients obtained. Petitioner devised and used a code system to disguise payments he received. In addition, he used and sold (through AHF) "copy not" pens which would not microfilm on bank records and which would not easily photocopy. On June 19, 1985, petitioner was convicted of aiding and assisting in the preparation and presentation of false and fraudulent income tax returns to the Internal Revenue Service pursuant to section 7206(2). He served a jail sentence as a result of that conviction. Respondent determined that the fees paid by members of AHF, APS and other organizations dominated and controlled by petitioner constituted income to petitioner for services rendered. Respondent argues that petitioner attempted to evade his *638 tax liabilities by hiding behind the cloak of religion, which cloak, respondent asserts, should not only be pierced but rendered asunder. Petitioner admits that the income of the organizations he controlled was earned through the performance of his services. He contends, however, that his vow of poverty prevents such income from being taxed. At trial, petitioner contended (for the first time) that if the income in issue is taxable to him, then he is entitled to a charitable contribution deduction in the amount of 50 percent of such income. OPINION The first issue for our consideration is whether amounts received by American Heritage Fellowship and other organizations founded by petitioner constitute taxable income to him. It is well established that gross income includes all income from whatever sources derived. Section 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). It is equally well established that income is taxed to the person who earns it. Lucas v. Earl, 281 U.S. 111 (1930). Thus, if income is earned by a taxpayer in his individual capacity, assignment or transfer of that income to an exempt organization does not relieve *639 such individual of tax liability thereon. Riker v. Commissioner, 244 F.2d 220 (9th Cir. 1957), affg. T.C. Memo. 1955-225, cert. denied 355 U.S. 839 (1957); Schuster v. Commissioner, 84 T.C. 764, 780 (1985), affd. 800 F.2d 672 (7th Cir. 1986); McGahen v. Commissioner, 76 T.C. 468 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983). Further, when, pursuant to an agreement, services are rendered to a third party for the benefit of a religious or charitable organization described in section 170(c), and money is paid by the third party to the organization, then the amount so paid is income to the person performing the services. Section 1.61-2(c), Income Tax Regs.
A member of a religious order under a vow of poverty is not immune from Federal income tax by reason of his clerical status or his vow of poverty, rather he is taxable to the same extent as any other person on income earned or received in his individual capacity. Kelley v. Commissioner, 62 T.C. 131 (1974). On the other hand, when an agent receives income on behalf of his principal, it is the *640 income of the principal, not the agent. Maryland Casualty Co. v. United States, 251 U.S. 342 (1920). Petitioner provided insufficient evidence to allow us to conclude that he acted as an agent for his various organizations. Moreover, given petitioner's unfettered dominion and control over all of the property and income received by his various organizations, we conclude that such a relationship did not exist. Petitioner was a tax protestor in the business of selling improper tax reduction programs; he practiced what he preached and attempted to utilize those programs to evade his own tax obligations. Although petitioner allegedly took a vow of poverty, the manner in which he handled his economic and financial affairs following AHF's creation remained virtually unchanged. He attempted to transmute the commercial into the ecclesiastical. No restrictions were placed on petitioner with respect to his use of his organizational earnings; all, or a substantial portion, of the income of his organizations was diverted for his personal use and benefit. There was no accounting of what was earned and how it was spent to assure the frugal and ascetic life of one who takes *641 a vow of poverty. McGahen v. Commissioner, 76 T.C. at 479. AHF and the other organizations founded by petitioner were simply attempts to create an "incorporated pocketbook." See Helvering v. Clifford, 309 U.S. 331 (1940). Thus, we conclude that the amounts paid to petitioner's organizations are taxable to him in the amount stipulated. The second issue is whether petitioner is entitled to a charitable contribution deduction for each of the years in issue. Petitioner bears the burden of proving his entitlement to such a deduction. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Charitable contribution deductions, like all deductions from gross income, are a matter of legislative grace. Deputy v. duPont, 308 U.S. 488 (1940). Although the tax exempt status of AHF (or lack thereof) is not directly at issue, petitioner must prove that he has made a charitable contribution as defined in section 170(c). He has failed to do so. Section 170(c)(2)(C) prohibits a contribution from qualifying as a charitable contribution if any part of the net earnings of the donee organization inures to the benefit of any private *642 person. Such inurement is not limited to the distribution of net profits as dividends. Unitarian Mission Church v. Commissioner, 74 T.C. 507, 512-513 (1980), affd. without published opinion 647 F.2d 163 (2d Cir. 1981); Lowry Hospital Association v. Commissioner, 66 T.C. 850, 857 (1976). Private inurement is strongly suggested when an individual with control over an organization's affairs is the principal recipient (or his family) of the organization's disbursements. Cf. Church of Eternal Life v. Commissioner, 86 T.C. 916, 927 (1986); Basic Bible Church v. Commissioner, 74 T.C. 846, 857 (1980). Where alleged charitable contributions are made with the expectation of receiving personal economic benefit in return for the contributions, they do not qualify as charitable contributions for Federal income tax purposes. Hansen v. Commissioner, 820 F.2d 1464 (9th Cir. 1987), affg. an order of this Court; Wedvik v. Commissioner, 87 T.C. 1458, 1465 (1986); DeJong v. Commissioner, 36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962). The *643 record herein is devoid of evidence showing that petitioner made charitable contributions to any of the organizations he operated and controlled. Even if we were convinced that petitioner in fact made the requisite contributions to his various organizations, nonetheless we would refuse to allow the deductions in question because of petitioners' pervasive use of the organizations' income for personal and living expenses. See, e.g., Burwell v. Commissioner, 89 T.C. 580 (1987); Davis v. Commissioner, 81 T.C. 806 (1983), affd. by unpublished opinion 767 F.2d 931 (9th Cir. 1985); Miedaner v. Commissioner, 81 T.C. 272 (1983). The third issue for our decision is whether petitioner is liable for self-employment tax as determined by respondent. Section 1401 imposes a tax on the self-employment income of every individual. Self-employment income is defined as "net earnings from self-employment," with certain exceptions not relevant here. Section 1402(b). The term "net earnings from self-employment" is defined as gross income, less certain deductions derived by an individual from any "trade or business carried on" by such *644 individual. Section 1402(a). Section 1402(e)(1) provides that licensed ministers are exempt from the tax imposed on self-employment income. However, such exemption applies only to income earned with respect to services performed as a minister in the exercise of his ministry. Section 1402(e)(1); sec. 1.1402(c)-5(a)(2), Income Tax Regs. Such services include the ministration of sacerdotal functions, the conduct of religious worship, and the maintenance of religious organizations. Sec. 1.1402(c)-5(b)(2), Income Tax Regs. They do not include the giving of income tax advice or any other services petitioner performed in connection with his organizations. Templeton v. Commissioner, 719 F.2d 1408, 1411 (7th Cir. 1983), affg. a Memorandum Opinion of this Court; Henson v. Commissioner, 66 T.C. 835, 839 (1976). As such, we hold that petitioner is liable for self-employment tax on the entire amounts of income as stipulated by the parties. The fourth issue for our decision is whether petitioner is liable for the addition to tax pursuant to section 6651(a)(1). Section 6651(a)(1) imposes an addition to tax when a taxpayer fails to timely file a return, unless *645 such failure is due to reasonable cause and not due to willful neglect. Petitioner bears the burden of proving that the section 6651(a) addition to tax does not apply. BJR Corp. v. Commissioner, 67 T.C. 111, 130 (1976); Shomaker v. Commissioner, 38 T.C. 192, 202 (1962); Rule 142(a). He failed to do so. Petitioner was required to file returns in each year in issue. Under section 6651(a)(1), absent reasonable cause or extensions, petitioner's returns were due by April 15 of each succeeding year. Section 6072(a). Because petitioner failed to prove that his failure to file was not due to reasonable cause, we sustain respondent's determination of the section 6651(a)(1) additions to tax. The fifth issue is whether petitioner is liable for additions to tax provided under section 6653(a) in 1980 and sections 6653(a)(1) and (a)(2) in 1981, 1982 and 1983. These additions to tax are presumed correct unless the taxpayer presents sufficient evidence controverting their applicability. Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); Bixby v. Commissioner, 58 T.C. 757 (1972); Rule 142(a). Under section 6653(a), negligence *646 is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner failed to produce sufficient evidence to rebut respondent's determination that the underpayments were attributable to negligence. Accordingly, we sustain respondent's determination. The sixth issue for our decision is whether additions to tax under section 6654 for underpayments of estimated tax should be imposed. Where prepayments of tax, either through withholding or by making quarterly estimated tax payments during the course of the year, do not equal the percentage of total liability required under the statute, imposition of the addition is mandatory, unless the taxpayer shows that one of several statutory exceptions, not relevant in this case, applies. Section 6654; Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). Since petitioner has made no effort to introduce evidence on this issue, we sustain respondent's determination of the additions to tax under section 6654(a) with *647 respect to petitioner's 1980 through 1984 taxable years. Reaver v. Commissioner, 42 T.C. 72, 83 (1964). Finally, respondent determined that, with respect to 1982 through 1984, petitioner's understatements of tax were substantial, and that he is therefore liable for additions to tax pursuant to section 6661. Petitioner bears the burden of proof concerning his lack of liability for the section 6661 addition to tax. Rule 142(a). The addition to tax is applicable where the amount of understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return, or (2) $ 5,000. Section 6661(b). There is no question here but that petitioner's understatements of his income tax constitute substantial understatements, unless such understatements can be reduced by application of section 6661(b)(2)(B). Section 6661(b)(2)(B) provides for the reduction of an understatement by that portion of the understatement which is attributable to: (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately *648 disclosed in the return or in a statement attached to the return. Clearly, petitioner neither had substantial authority for his failure to report the large amounts of income that he received, nor did he adequately disclose such failure. Respondent's determination of the section 6661 addition to tax, at a rate of 25 percent of the underpayment, is sustained. To reflect the concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the underpayment. ↩